UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIZZLING BLACK ROCK STEAK
HOUSE FRANCHISING, INC., a
Michigan corporation,                          Case No. 21-cv-11621

                    Plaintiff,                 Paul D. Borman
                                               United States District Judge
v.

HAROLD L. KESTENBAUM, PC, a
New York professional corporation, and
HAROLD L. KESTENBAUM, an
individual,

                    Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE PURSUANT TO FED. R. CIV. P. 12(f) (ECF NO. 40)

Plaintiff Sizzling Black Rock Steak House Franchising, Inc. brings this

lawsuit against its former counsel, Defendants Harold Kestenbaum and Harold L.

Kestenbaum P.C., alleging claims for professional negligence and negligent

misrepresentation.[1] Now before the Court is Plaintiff's Motion to Strike Defendants'

_____

[1] Spadea Lignana, LLC, a law firm with offices in Pennsylvania and New York, was
formerly a named defendant in this case, but it was dismissed for lack of personal
jurisdiction in the Court's December 17, 2021, Opinion and Order. (ECF No. 12,

Eighth Affirmative Defense Pursuant to Fed. R. Civ. P. 12(f) (ECF No. 40.) The motion has been fully briefed. The Court does not believe that oral argument will aid in its disposition of the appeal; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, Plaintiff's motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Facts

This statement of facts is taken from the Court's December 17, 2021, Opinion and Order on Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### 1. Black Rock engages Defendants Kestenbaum and HLK P.C.

Plaintiff Sizzling Black Rock Steak House Franchising, Inc. (Black Rock) is a Michigan corporation that franchises restaurants and licenses what it calls a "Restaurant Concept." (ECF No. 7, First Amended Complaint (FAC), ¶¶ 1-3, PageID.123). Specifically, Black Rock owns, operates and franchises restaurants and licenses the Restaurant Concept to area representatives for use in establishing

---

Opinion and Order.) With Spadea's dismissal, Plaintiff's claim for negligent supervision (Count III), asserted only against Spadea, was also dismissed.

restaurants in specific geographic areas pursuant to area representative agreements. (*Id.* ¶ 3, PageID.123.)

In 2013, Black Rock won first place in a contest called "America's Next Top Restaurant Franchise" (the Contest). (ECF No. 6-2, Declaration of Harold Kestenbaum (Kestenbaum Decl.) ¶ 9, PageID.82.) The prize included free "initial legal services" from Defendant Harold Kestenbaum, who, at the time, ran a firm called Harold L. Kestenbaum, P.C. (HLK P.C.) based in Melville, New York. (*Id.* ¶¶ 4, 7, PageID.81-82.) Kestenbaum's legal practice focuses on franchise law and he is licensed to practice in New York and New Jersey. (*Id.* ¶ 3, PageID.81-82) (FAC ¶ 5, PageID.123.) Kestenbaum was involved in the Contest through an acquaintance, Paul Samson, president of a Contest sponsor called Franchise Edge based in Florida. (Kestenbaum Decl., ¶¶ 6-7, PageID.82). Kestenbaum states that he understood that, after he provided initial legal services at no cost to the Contest winner, that the company would hire Kestenbaum on a monthly retainer. (*Id.* ¶ 8, PageID.82.)

In 2014, Kestenbaum began providing free legal services to the Contest winner, Plaintiff Black Rock – preparing Black Rock's franchise disclosure document and other initial documents over a four to six week period. (Kestenbaum Decl. ¶ 10, PageID.82.) During this time period, Kestenbaum worked with the

3

Contest sponsor, Samson and his partner, Scott Anderson, and had no direct contact with Black Rock or its principals. (*Id.* ¶ 11, PageID.83.)

Black Rock subsequently retained Kestenbaum as its legal counsel for all franchise matters, with a monthly retainer of $1,500 for legal services plus reimbursement of any costs Kestenbaum incurred on Black Rock's behalf. (FAC ¶¶ 16-17, PageID.124.) This monthly retainer increased to $2,000 per month beginning in August 2018. (*Id.* ¶ 18, PageID.125.)

### 2.    Kestenbaum prepares the First ARA for Black Rock

Starting in 2015, Black Rock sought to enter into area representative agreements (ARAs), which would grant area representatives the exclusive right to open and operate, or to assist other franchisees in opening and operating Black Rock Bar & Grill Restaurants in accord with the Restaurant Concept in a specific geographic area. (FAC ¶ 19, PageID.125.) According to Kestenbaum, these ARAs were not limited to Michigan, but also included geographic regions in Florida, Alabama, Georgia, Louisiana, Illinois, Maryland, and Texas. (Kestenbaum Decl. ¶ 13, PageID.83.) Each ARA requires that the area representative develop a certain number of restaurants in accord with deadlines set forth in the ARA's development schedule. (FAC ¶ 20, PageID.125.) In addition, according to Black Rock, a "key, material and necessary provision of each ARA" is that an area representative's

4

failure to comply with the ARA's development schedule would result in termination of the ARA *and* termination of the area representative's right to any future royalties. (*Id.* ¶ 22, PageID.125-26.)

Black Rock explains that, in the franchise industry, royalties which continue to be owed to an area representative based on continuing revenue from Restaurants opened during the term of an ARA, *after* that ARA is terminated, are commonly known as "Evergreen Royalties." (*Id.* ¶ 21, PageID.125.) Black Rock did not want any ARAs prepared for it to include such Evergreen Royalties. (*Id.* ¶ 22, PageID.125-26.)

In 2015, Kestenbaum, as attorney for Black Rock, prepared an ARA ("the First ARA") between Black Rock and BR Restaurants Holding Company, LLC (BR Restaurants), a company managed by Robert Gries. (FAC ¶¶ 23-24, PageID.126.) This First ARA included a development schedule and provided that BR Restaurants would forfeit royalties if it failed to satisfy the schedule, *i.e.,* the First ARA did not include a provision for Evergreen Royalties. (*Id.* ¶¶ 26-27, PageID.126.) The First ARA was executed by the parties on May 18, 2015. (*Id.* ¶ 28, PageID.126.)

### 3. Kestenbaum prepares the Second ARA for Black Rock

In June 2017, Kestenbaum prepared a second ARA ("the Second ARA") for Black Rock, this time between Black Rock and Black Rock Midwest LLC (BRM

LLC). (FAC ¶ 29, PageID.126-27.) The Second ARA included a development schedule requiring BRM LLC to open a certain number of Restaurants within "a defined geographic area"[2] but, unlike the First ARA, this Second ARA did *not* include a clause requiring BRM LLC to forfeit royalties if it failed to comply with the development schedule. Instead, the Second ARA included a provision for Evergreen Royalties. (*Id.* ¶¶ 31-32, PageID.127.) Black Rock alleges that it executed the Second ARA on June 21, 2017, only after Kestenbaum assured Black Rock that the Second ARA did not include a provision for Evergreen Royalties. (*Id.* ¶¶ 33-34, PageID.127-28.)

### 4.    Kestenbaum prepares the Third ARA for Black Rock

In June 2018, Kestenbaum prepared a third ARA ("the Third ARA") as counsel for Black Rock, this time between Black Rock and BR Holdings II, LLC (BRH II). (FAC ¶ 35, PageID.128.) Robert Gries, the managing partner of BR Restaurants (signatory to the First ARA), is also the managing partner of BRH II, and the geographic region at issue in this ARA included Florida, Alabama, Georgia, Louisiana, and Texas. (*Id.* ¶¶ 36-37, PageID.128.) This Third ARA, executed on June 21, 2018, again included a development schedule but, contrary to

---

[2] Neither the FAC nor the parties' briefing specifies what the "defined geographic area" is in the Second ARA. However, BRM LLC is a Michigan LLC.

Kestenbaum's express assurances to the contrary, and like the Second ARA, this Third ARA included a provision for Evergreen Royalties. (*Id.* ¶¶ 37-38, PageID.128.)

In 2020, Black Rock determined that BRH II was not meeting the requirements in the development schedule, and Kestenbaum negotiated a termination of the Third ARA, on behalf of Black Rock. (FAC ¶¶ 40-41, PageID.129.) The negotiated termination agreement, executed on June 19, 2020, included a mutual release which resulted in the discharge of any Evergreen Royalties that would have been due to BRH II under the Third ARA. (*Id.* ¶¶ 43-44, PageID.129.)

### 5.    HLK P.C. merges with Spadea Lignana

On May 1, 2019, Kestenbaum's firm merged with former-defendant Spadea Lignana, LLC (Spadea). (FAC ¶ 12, PageID.124.) (ECF No. 10-2, HLK Letter, PageID.190 ("[W]e are excited to announce that effective May 1, 2019 the merger of the law office of Harold L Kestenbaum, PC with the law firm of Spadea Lignana, LLC.").) According to Defendants, Kestenbaum's firm became a contractor for Spadea Lignana on that date. (Kestenbaum Decl. ¶ 18, PageID.84) (ECF No. 6-3, Declaration of Josh Lignana (Lignana Decl.) ¶ 6, PageID.88.) Spadea has two members – Thomas Spadea, a citizen of Pennsylvania, and Josh Lignana, a citizen

7

of New Jersey – and has offices in Pennsylvania and New York only. (Lignana Decl. ¶¶ 3-4, PageID.87.)

### 6.    Kestenbaum and Spadea prepare the Fourth ARA for Black Rock

In July 2020, Kestenbaum, now with Spadea Lignana and still representing Black Rock, prepared a fourth ARA ("the Fourth ARA"), between Black Rock and Third Bite of the Apple LLC (Third Bite). (FAC ¶ 46, PageID.129-30.) The Fourth ARA required Third Bite to open a certain number of restaurants in Florida pursuant to the ARA's development schedule. (*Id.* ¶ 47, PageID.130.) Black Rock alleges that it executed the agreement on July 9, 2020, in reliance on Kestenbaum's assurance to Black Rock that the Fourth ARA did not provide for Evergreen Royalties. (*Id.* ¶ 48, PageID.130.)

### 7.    Termination of the Second ARA

In late 2020, Black Rock began to consider terminating the Second ARA with BRM LLC because BRM LLC was not meeting the Second ARA's development schedule, having opened only four Restaurants when it was required to open ten. (FAC ¶¶ 49-50, PageID.130.) On December 20, 2020, after reviewing the Second ARA, Jacob Schifko, a Black Rock representative, send an email to Kestenbaum expressing his concern that the Second ARA included a provision for Evergreen

8

Royalties, even though Black Rock expressly directed that its ARAs were not to include such a provision. (*Id.* ¶¶ 51-52, PageID.130-31.) Specifically, Schifko wrote, in part:

> Please see the attached ARA for review.
>
> Our intent for this agreement was to make it so if the agreement gets terminated for whatever reason before they reach 10 stores developed that they lose all compensation. Including their split of franchise fees, royalty fees and rebates. After review, there seems to be some contradictions throughout….

(*Id.* ¶ 53, PageID.131.) Kestenbaum responded later that same day, stating:

> Jake, it looks like that if they fail to reach 10 units, they loose [sic] the rebate money, but they still get the royalties on what is open and operating as long as they continue to provide the required services. There really is no contradiction. Most ARA deals allow line AR to continue to receive royalties on existing deals after termination as long as they provide services. Unless that was negotiated initially, which it was not, most ARA's allow the royalty payments to continue. But it is clear that unless they have done 10 units, the rebates cease altogether.

(*Id.* ¶ 54, PageID.131-32.)

The following day, December 21, 2020, Kestenbaum's opinion was confirmed by another attorney at Spadea, Andrew Matson, and then reiterated by Kestenbaum in an email. (FAC ¶¶ 55-56, PageID.132.) Schifko responded that same day, expressing frustration with Kestenbaum and stating in part:

…. I believe you are reckless by not paying attention to what you are doing and what the consequences of your actions actually are. You are putting peoples [sic] lives in jeopardy when we could easily avoid it.

We will continue conversations with Andrew.

(*Id.* ¶ 58, PageID.133.)

Kestenbaum responded by email on December 22, 2020, contending for the first time that the Second ARA included a "catch all" provision such that any default (including a failure to meet the BRM LLC development schedule) would terminate all payments, including Evergreen Royalties. (FAC ¶ 59, PageID.133-34.) Black Rock asserts that Kestenbaum's new theory was directly contrary to Matson's conclusion and Kestenbaum's prior position, and belied by the language of the Second ARA, which Kestenbaum had prepared. (*Id.* ¶ 60, PageID.134.)

When it became clear that BRM LLC would not meet the development schedule, Black Rock terminated the Second ARA with BRM LLC on or about February 3, 2021. (FAC ¶¶ 61-62, PageID.134-35.) On February 9, 2021, Matson again confirmed that the Second ARA requires payment of Evergreen Royalties to BRM LLC. (*Id.* ¶ 63, PageID.135.)

10

### 8. Black Rock ends its relationship with Kestenbaum, HLK P.C. and Spadea

In May, 2021, Black Rock ended its client relationship with Kestenbaum, Harold L. Kestenbaum, P.C., and Spadea. (FAC ¶ 64, PageID.136.) Black Rock alleges that it is paying approximately $20,000 per month in Evergreen Royalties to BRM LLC, as required by the terms of the Second ARA, and that it anticipates that it will continue to pay that amount for at least 10 years. (*Id.* ¶¶ 65, 67-68, PageID.136.)

### B. Procedural History

On June 10, 2021, Plaintiff Black Rock filed this legal malpractice action against Defendants Kestenbaum, HLK P.C., and Spadea in the Oakland County Circuit Court. (ECF No. 1-1, Compl.) Defendants removed this action to this Court on July 14, 2021, based on diversity jurisdiction. (ECF No. 1, Notice of Removal).

On July 22, 2021, Plaintiff refiled its Complaint pursuant to the Court's prior Order to refile the state court complaint in accordance with the Eastern District of Michigan Local Rules. (ECF No. 7, FAC.) Plaintiff alleges that Defendants negligently prepared the Second, Third and Fourth ARAs to include a provision for Evergreen Royalties in direct contravention to Black Rock's instruction, and Plaintiff asserts claims for: (1) Professional Negligence by all Defendants;  (2)

11

Negligent Misrepresentation against all Defendants; and (3) Negligent Supervision against Defendant Spadea. (*Id.*)

On July 21, 2021, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 6, Defs.' Mot.) This motion was fully briefed.

On December 17, 2021, the Court entered an Opinion and Order granting in part and denying in part Defendants' motion to dismiss. (ECF No. 12, Opinion and Order.) Specifically, the Court granted the motion to dismiss as to Defendant Spadea because it did not have specific personal jurisdiction over that Defendant. But the Court denied the motion to dismiss as to Defendants Kestenbaum and HLK PC, holding that the Court has specific personal jurisdiction as to these Defendants. (*Id.*)

There are now two remaining claims against Defendants Kestenbaum and HLK P.C. in this case: (1) Count I – Professional Negligence, and (2) Count II – Negligent Misrepresentation. (ECF No. 7, FAC.)

On January 21, 2022, Defendants Kestenbaum and HLK P.C. filed their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. (ECF No. 15, Answer.) In their Answer, Defendants assert eight affirmative defenses.

On December 21, 2022, Plaintiff filed the instant Motion to Strike Defendants' Eighth Affirmative Defense Pursuant to Fed. R. Civ. P. 12(f). (ECF No.

40, Pl.'s Mot.) Defendants' Eighth Affirmative Defense states: "Upon information and belief, plaintiff's claims are time-barred under the relevant statute of limitations." (ECF No. 15, Answer, PageID.472-73.) Plaintiff argues that this affirmative defense should be stricken pursuant to Fed. R. Civ. P. 12(f) because (1) it is vague and conclusory and does not identify any statute of limitations which Defendants contend is "relevant" to Plaintiff's claims, and (2) it cannot serve to bar Plaintiff's claim for professional negligence under the undisputed facts of this case. (ECF No. 40, Pl.'s Mot.)

Defendants filed a Response in opposition to Plaintiff's motion to strike on January 11, 2023. (ECF No. 45, Defs.' Resp.) Defendants argue that Plaintiff's motion should be denied because it is untimely and because it is premature. Defendants contend that the affirmative defense was sufficiently pleaded, and that the facts and applicable law governing the application of the statute of limitations to Plaintiff's legal malpractice claims are in discovery and incomplete.[3]

On January 18, 2023, Plaintiff filed a Reply brief in support of its motion to strike. (ECF No. 48, Pl.'s Reply.) Plaintiff argues that this Court has discretion to

---

[3] On April 28, 2023, the parties' Stipulation Amending Civil Case Management and Scheduling Order (ECF No. 52) was entered, setting deadlines, in part, for fact and expert discovery cutoff for July 19, 2023.

13

consider this motion even if untimely, that the motion is not "facially deficient," and that Defendants' Eighth Affirmative Defense was not sufficiently pleaded and should be stricken because it cannot apply in this case.

## II. LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Neal v. City of Detroit*, No. 17-13170, 2018 WL 1399252, at *1 (E.D. Mich. Mar. 19, 2018) (quoting *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy*, *LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015)).

A district court "has wide discretion to strike 'redundant, immaterial, impertinent, or scandalous' material from a pleading." *State Farm Mut. Auto. Ins. Co.*, 107 F. Supp. 3d at 801. However, "because of the practical difficulty of deciding cases without a factual record[,] it is well-established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United*

14

*States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted); *see also Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

To grant a Rule 12(f) motion, the court must determine that the challenged allegations are "so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2004). A motion to strike is a "drastic remedy" and "[g]enerally, the matter to be stricken must have "no possible relation to the controversy." *House of Providence v. Meyers*, 458 F. Supp. 3d 621, 647 (E.D. Mich. 2020) (quoting *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822). "Where the challenged allegations 'might serve to achieve a better understanding of the ... claim for relief or perform some other useful purpose in promoting the just and efficient disposition of litigation,' a motion to strike should be denied." *Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1059 (W.D. Tenn. 2011) (alteration in original) (quoting *Sherrills v. Wilson*, No. 1:05-CV-310, 2005 WL 1711132, at *1 (W.D. Mich. July 21, 2005)).

### III.  ANALYSIS

**A. Plaintiff's Motion to Strike is Untimely**

Defendants argue that Plaintiff's motion to strike is untimely under Rule 12(f), and the Court agrees. Rule 12(f) provides that a party may file a motion to strike "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Defendants' Answer, with the asserted affirmative defenses, was served on January 21, 2022. (ECF No. 15.) But Plaintiff did not file the instant motion to strike until 11 months later, on December 21, 2022. (ECF No. 40.) Given that this filing was significantly more than 21 days after Defendants filed their Answer and affirmative defenses, Plaintiff's motion is untimely under Rule 12(f)(2).

Plaintiff does not dispute that its motion to strike is untimely under Rule 12(f)(2), and instead contends that a Court is permitted to strike an insufficient defense on its own initiative at any time under Rule 12(f)(1), and that the Court should exercise that discretion to consider Plaintiff's untimely motion. Plaintiff contends that the parties engaged in facilitation on December 6, 2022, and when that facilitation did not resolve this matter, Plaintiff filed the instant motion on December 21, 2022. (ECF No. 40, Pl.'s Mot., PageID.636-37.)

The Court finds this argument by Plaintiff unavailing, as the mere possibility that the parties might resolve their dispute at facilitation does not excuse them from

following the Court's procedural rules. If Plaintiff believed that the facilitation, occurring over 10 months after Defendants' answer was filed, forestalled filing this motion, Plaintiff should have sought a stipulated order granting it extra time to file. Plaintiff did not do so, and courts within this District and the Sixth Circuit Court of Appeals have denied Rule 12(f) motions to strike as untimely under similar circumstances. *See Laborers Pension Trust Fund-Detroit and Vicinity v. L.V. Painting & Contracting, Inc.*, No. 16-12003, 2017 WL 371229, at *3 (E.D. Mich. Jan. 26, 2017) (denying plaintiff's Rule 12(f) motion filed 12 days late as untimely, and also denying the motion on the merits); *End Prod. Results, LLC v. Dental USA, Inc.*, No. 12-11546, 2014 WL 5347354, at *1 (E.D. Mich. Oct. 20, 2014) (denying motion to strike, filed 69 days after the defendant's answer was filed, as untimely, noting plaintiff's "failure to offer any justification for its delay in filing the motion to strike); *D.T.I. of Saginaw, Inc. v. Zurich Am. Ins. Co.*, No. 2:08-CV-10202, 2008 WL 11357846, at *1 (E.D. Mich. Apr. 30, 2008) (exercising discretion to deny a motion to strike as untimely under Rule 12(f)(2), and also refusing to strike answer and affirmative defenses *sua sponte*); *accord Cherry v. Apple CLK, LLC*, No. 3:20-cv-00176, 2020 WL 5912814, at *2 (M.D. Tenn. Oct. 6, 2020) ("Because the motion [to strike] was filed ninety days after the Answer, and the plaintiff offers no justification for the delayed filing, the motion is untimely and subject to denial on

17

this basis as well."); *Cone v. Hankook Tire Co.*, No. 14-1122, 2017 WL 53287, at

*2 (W.D. Tenn. Jan. 4, 2017) (denying Rule 12(f) motion, filed 18 months late, as

untimely because "[t]he eighteen-month delay is significant, and Plaintiffs have

offered no explanation for their failure to comply with the time constraints found in

Rule 12."); *Battaglia v. United States*, No. 1:07CV778, 2010 WL 11561510, at *1-

2 (N.D. Ohio Aug. 30, 2010) (denying motion to strike filed five months late as

untimely).

The Court therefore denies Plaintiff's motion to strike, filed eleven months

after Defendants' Answer with Affirmative Defenses was filed, as untimely under

Fed. R. Civ. P. 12(f)(2).

### B. Plaintiff's Motion to Strike Would Also be Denied on the Merits

Alternatively, if the Court exercised its discretion to consider Plaintiff's

untimely Motion under Rule 12(f)(1), and considered the merits of Plaintiff's

arguments, the Motion would also be denied. The Sixth Circuit has cautioned that

the "drastic" remedy of striking a pleading should be granted "only when the

pleading to be stricken has no possible relation to the controversy." *Brown &

Williamson Tobacco Corp.*, 201 F.2d at 822. "Motions to strike are viewed with

disfavor and are not frequently granted." *Operating Eng'rs Local 324*, 783 F.3d at

1050. The Court agrees with Defendants that none of the grounds asserted by Plaintiff in its Motion warrants striking Defendants' Eighth Affirmative Defense.

Plaintiff argues in its Motion that Defendants' Eighth Affirmative Defense – which states "[u]pon information and belief, plaintiff's claims are time-barred under the relevant statute of limitations" – should be stricken because it is "bare bones and conclusory, and fails to give any fair notice to Plaintiff of the actual nature of the affirmative defense." (ECF No. 40, Pl.'s Mot., PageID.638.) Plaintiff then goes on to devote the bulk of its motion to argue that the Eighth Affirmative Defense should be stricken because it cannot serve to bar Plaintiff's claim for professional negligence based on the statute of limitations under the facts in this case – a merits-based argument on Plaintiff's claims in this case. (*Id.* PageID.639-51.) (*See also* ECF No. 48, Pl.'s Reply, PageID.770 (contending, "based upon the undisputed facts, [Plaintiff's] claims fall *within* any applicable statute of limitations that relates to those claims as a matter of law") (emphasis in original).)

Defendants argue that Plaintiff's motion to strike should be dismissed because it is facially deficient, premature, and because the Eighth Affirmative Defense is sufficiently pleaded. Defendants contend that the Eighth Affirmative Defense provides fair notice of the defense of the statute of limitations, which is directly related to Plaintiff's claims, and that the Court should refrain from evaluating the

merits of that affirmative defense here because the parties are still engaged in discovery and the underlying facts and claims have not been fully developed. Fact and expert discovery does not close in this case until July 19, 2023, and dispositive motions must be filed by August 21, 2023. (ECF No. 52.)

The Federal Rules of Civil Procedure provide, when responding to a complaint, that a defendant generally must "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Avoidance or affirmative defenses must be stated affirmatively, and Rule 8 furnishes a non-exhaustive list of certain specific affirmative defenses that must be raised in the answer. Fed. R. Civ. P. 8(c)(1). That list specifically includes the defense of the statute of limitations. *Id.*

The Court finds that Defendants' Eighth Affirmative Defense comports with the Federal Rules of Civil Procedure because the affirmative defense gives Plaintiff fair notice of the nature of the defense and contains a level of detail courts have found to provide sufficient notice of a basis. *See, e.g., Montgomery v. Wyeth*, 580 F.3d 455, 467 (6th Cir. 2009) (finding defendant sufficiently pleaded an affirmative defense that stated "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose."). For now, that is all that is required. Defendants need not "lay out the detailed basis for a Rule 12(b) defense." *See King*

20

*v. Taylor*, 694 F.3d 650, 657 (6th Cir. 2012). Nor are they required to "expressly link each defense to specific claims to provide fair notice." *Sprint Sols., Inc. v. Shoukry*, No. 2:14-cv-00127, 2014 WL 5469877, at *4 (S.D. Ohio Oct. 28, 2014).

Plaintiff's complaint that the Eighth Affirmative Defense is "bare bones and conclusory" and thus insufficiently pleaded fails. To the extent Plaintiff contends that the affirmative defense fails to meet the pleading standard as articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which held that "a complaint must contain sufficient factual matter … to state a claim for relief that is plausible on its face," *Iqbal*, 556 at 697 (quoting *Twombly*, 550 U.S. at 570), that argument is rejected. Although the Sixth Circuit Court of Appeals has not yet expressly resolved the issue of whether the plausibility standard set forth in *Twombly* and *Iqbal* applies to the requirements for pleading affirmative defenses, *see Depositors Ins. Co. v. Estate of Ryan*, 637 F. App'x 864, 869 (6th Cir. 2016); *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 n.6 (6th Cir. 2012), the Sixth Circuit, in cases decided after both *Twombly* and *Iqbal*, has held that "[t]he Federal Rules of Civil Procedure do not require a heightened pleading standard for a statute of repose defense" and that defendant's pleading that "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose" sufficed under the "fair notice" standard. *Montgomery*,

21

580 F.3d at 467-68 (citing Rule 8(b)(1)'s requirement that a party "state in short and plain terms its defense to each claim," as well as the "fair notice" standard in *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also King*, 694 F.3d at 657 ("An answer is not place to lay out the detailed basis for a Rule 12(b) defense.") (citations omitted).

This understanding is consistent with the language of Rule 8. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(b), on the other hand, only requires a statement "in short and plain terms" of "defenses to each claim," and Rule 8(c), which governs affirmative defenses, requires only that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense...." Fed. R. Civ. P. 8(b), (c)(1). As numerous courts have observed, *Iqbal* and *Twombly* analyzed only complaints and Rule 8(a)(2). *See, e.g., Nexterra Sys. Corp. v. DeMaria Bldg. Co.*, No. 16-13454, 2017 WL 345682, at *2 (E.D. Mich. Jan. 24, 2017) (stating that "the holdings in *Twombly* and *Iqbal* were limited to Rule 8(a)); *Cottle v. Falcon Holdings Mgmt., LLC,* No. 2:11–CV–95–PRC; 2012 WL 266968, at *2 (N. D. Ind. Jan. 30, 2012) ("[T]he language of Rule 8(a)(2) relied on by the Supreme Court in *Twombly* and *Iqbal* .... is not contained in Rules 8(b) or (c).").

This Court agrees with other courts in this District, and within the Sixth Circuit Court of Appeals, that have addressed this issue and declined to apply the

22

*Twombly-Iqbal* plausibility standard to affirmative defenses. *See, e.g., Mockeridge v. Alcona Cnty. by Bd. of Commr's*, 599 F. Supp. 3d 561, 570 (E.D. Mich. 2022) (declining to apply *Twombly-Iqbal* to strike affirmative defenses, and applying fair notice pleading standard); *Bambach v. Lapeer Cnty.*, No. 18-14039, 2020 WL 2812758, at *12-13 (E.D. Mich. May 29, 2020) (finding that "controlling Sixth Circuit law and the language of the applicable rules weigh against application of *Twombly* and *Iqbal's* heightened pleading standard to defendant's affirmative defenses here," and applying the fair notice pleading standard); *ZMCC Properties, LLC v. Primone Ins. Co.*, No. 19-12428, 2019 WL 11648517, at *2 (E.D. Mich. Dec. 19, 2019) ("Unlike in motions to dismiss a claim under Rule 12(b)(6), '[a]n affirmative defense may be pleaded in general terms and will be sufficient so long as it gives plaintiff fair notice of the nature of the defense.' The Sixth Circuit has denied a motion to strike when a defendant's affirmative defense was a one sentence conclusory statement that '[the] [p]laintiff's claims [were] barred by the doctrine of res judicata.'") (internal citations omitted); *Meyers v. Vill. of Oxford*, No. 17-cv-10623, 2019 WL 653807, at *3 (E.D. Mich. Feb. 15, 2019) ("[C]ontrolling Sixth Circuit law and the language of the applicable rules weigh against application of *Twombly* and *Iqbal's* heightened pleading standard to defendant's affirmative defenses here."); *accord Greenberger v. Bober, Markey, Fedorovich & Co.*, 343

23

F.R.D. 375, 377 (N.D. Ohio 2023) (declining to apply *Twombly* and *Iqbal* to the practice of pleading affirmative defenses); *Tomlin v. City of Eubanks*, No. 5:22-cv-00200, 2022 WL 16707970, at *1-2 (E.D. Ky. Nov. 4, 2022) (collecting cases applying "fair notice" standard to affirmative defenses); *Artisan Estate Homes, LLC v. Hensley Custom Bldg. Grp., LLC*, No. 1:19-cv-566, 2022 WL 2915586, at *7 (S.D. Ohio July 25, 2022) (holding defenses alleging that the amended complaint is barred "due to the statute of limitations" and the "doctrine of laches" are sufficient to fairly notice plaintiff of the nature of these defenses because "[t]he statute of limitations and the doctrine of laches are well-worn defenses, familiar to average practitioners" and simply assert that plaintiff waited too long to file suit).[4]

The Court therefore finds that Defendants' Eighth Affirmative Defense is sufficiently pleaded to give Plaintiff "fair notice" of the nature of the statute of limitations defense. Plaintiff has not shown that the statute of limitations affirmative

---

[4] In *Taylor v. City of Saginaw*, No. 17-cv-11067, 2020 WL 376453 (E.D. Mich. Jan. 23, 2020) (Ludington, J.), the court applied *Twombly-Iqbal* to strike several affirmative defenses. However, other courts within this District have since declined to extend *Taylor*, distinguishing that case because "[t]he affirmative defenses at issue in *Taylor* were filed more than two years after the case began – after threshold legal questions had been briefed, the case had been dismissed, and the matter had been returned to th[e] Court on remand from the Sixth Circuit." *Mockeridge*, 599 F. Supp. 3d at 570; *Pitt v. Township of Lee*, No. 20-cv-13021, 2021 WL 352000, at *2 (E.D. Mich. Feb. 2, 2021) (Ludington, J.) (same).

defense is wholly unrelated to Plaintiff's claims in this case or that has it "no possible relation to the controversy." *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822. Plaintiff has failed to show that Defendants' Eighth Affirmative Defense cannot succeed under any circumstances.

Rather, Plaintiff essentially contends that it will ultimately be meritorious on a statute of limitations defense. A review of Plaintiff's motion reveals that it is requesting that the Court decide the ultimate merits of Defendants' statute of limitations affirmative defense in the context of a motion to strike under Rule 12(f). This the Court will not do. Plaintiff has not asserted any real prejudice in allowing the affirmative defense to stand in Defendants' Answer. It is relatively early in the litigation, with discovery ongoing, and Defendants will bear the burden of proving the affirmative defense. Accordingly, the Court finds that the applicability, or not, of the statute of limitations to Plaintiff's claims is more appropriately determined on dispositive motion practice, following the close of discovery, not on a motion to strike at this stage of the litigation. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 738 (E.D. Mich. 2017) (declining to strike statute of limitations affirmative defense because "it does not 'appear[] to a certainty' that the plaintiffs would succeed in defeating every conceivable nuance of the limitations defense 'despite any state of the facts which could be proved in support of the defense and are

25

inferable from the pleadings.'") (quoting *Operating Eng'rs Local 324 Health Care Plan*, 783 F.3d at 1050); *see also Mockeridge*, 599 F. Supp. 3d at 571 ("Even if pled in a boilerplate manner, those defenses raise questions of law or fact that are reasonably pertinent to some or all of Plaintiffs' claims. Such questions should not be resolved on a motion to strike.") (citing *M&C Holdings Del., P'ship v. Great Am. Ins. Co.*, No. 1:20-CV-121, 2021 WL 21447, at *5 (S.D. Ohio Jan. 4, 2021) ("[E]ven when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions properly are viewed as best determined only after further development…."), *report and recommendation adopted by* 2021 WL 426421 (S.D. Ohio Feb. 8, 2021)).

Therefore, because Defendants' Eighth Affirmative Defense has been sufficiently pleaded, and "the action of striking a pleading should be sparingly used," *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822, the Court denies Plaintiff's request for this "drastic remedy."

## IV. CONCLUSION

Based on all of the above, the Court exercises its discretion to **DENY** Plaintiff's Motion to Strike Defendants' Eighth Affirmative Defense Pursuant to

Fed. R. Civ. P. 12(f) (ECF No. 40) as untimely, and alternatively, on the merits.

    IT IS SO ORDERED.

s/Paul D. Borman          

Paul D. Borman

United States District Judge

Dated: May 26, 2023